1  BARRY J. PORTMAN
   Federal Public Defender
2  ELIZABETH M. FALK
   Assistant Federal Public Defender
3  450 Golden Gate Avenue
   San Francisco, CA  94102
4  Telephone:  (415) 436-7700

5  Counsel for Defendant QUITMEYER

6
                IN THE UNITED STATES DISTRICT COURT
7
                FOR THE NORTHERN DISTRICT OF CALIFORNIA
8

9  UNITED STATES OF AMERICA,              )    No. CR 07-0296 MAG
                                          )
10                 Plaintiff,             )    **DEFENDANT'S MOTION TO**
                                          )    **SUPPRESS**
11     v.                                 )
                                          )
12  CAROL QUITMEYER,                      )
                                          )    Date: September 27, 2007
13                 Defendant.             )    Time: 11:00 a.m.
                                          )    Honorable Nandor J. Vadas
14  _____   )

15
   TO:  UNITED STATES OF AMERICA, PLAINTIFF; AND SCOTT SCHOOLS, UNITED
16       STATES ATTORNEY; AND DEREK OWENS, ASSISTANT UNITED STATES
        ATTORNEY:
17
       PLEASE TAKE NOTICE that on September 27, 2007 at 11:00 a.m. in the courtroom of the
18
   Honorable Nandor J. Vadas, defendant Carol Quitmeyer will move for an order suppressing evidence
19
   and statements obtained during the course of her unlawful seizure and interrogation on January 13,
20
   2007.  This motion is based on the Fourth Amendment of Constitution of the United States, all
21
   relevant case law and statutory authority, the following memorandum of points and authorities, and
22
   such argument as the Court will entertain at the evidentiary hearing.
23
   //
24
   //
25
   //
26

DEF. MOT. TO SUPPRESS
No. CR 07-0296 MAG                                                                          1

## INTRODUCTION

Ms. Carol Quitmeyer is charged with operating a motor vehicle under the influence of alcohol, in violation of 36 C.F.R. § 4.23(a)(1). She was arrested on January 13, 2007 following a stop of the vehicle she was driving. Ms. Quitmeyer now moves the Court to suppress all evidence and statements obtained as a result of her seizure on January 13, 2007 because the arresting officer lacked reasonable suspicion to seize Ms. Quitmeyer by verbally ordering her to stop her vehicle and knocking on her passenger window. Any evidence obtained thereafter – including the police officer's observation that she spoke slowly, his detection of the scent of alcohol, Ms. Quitmeyer's verbal admission that she had been drinking, her inability to complete a field sobriety test and her blood sample – must be suppressed as tainted fruit of the illegal seizure. The lack of reasonable suspicion on the part of the officer renders the traffic stop unlawful, and all evidence subsequently obtained as a result of the stop must be suppressed.

## STATEMENT OF FACTS

According to United States Park Police Officer Hardin, Ms. Quitmeyer's red Volkswagon attempt to navigate between the "serpentine barriers" blocking the secured area surrounding the north anchorage of the Golden Gate Bridge. *See* Supplemental Criminal Incident Report, attached hereto as Exhibit A, at Bates 0002. Officer Hardin states that when Ms. Quitmeyer attempted to turn her vehicle around, it became stuck between the barriers and a ditch. *Id.* Officer Hardin then "approached the vehicle on foot and shined [his] flashlight in the window to attract the driver's attention and gave loud verbal commands for her to stop the vehicle." Officer Hardin then knocked on the passenger window, causing Ms. Quitmeyer to roll the window down. Officer Hardin identified her by her California driver's license and asked if she had been drinking. The officer observed that her "eyes were bloodshot and she spoke with a slow tempo" and she admitted to having a "few drinks." *Id.* Ms. Quitmeyer complied with Officer Hardin's request that she "perform some maneuvers to demonstrate her ability to safely operate a motor vehicle." *Id.* The

1  results of these field sobriety tests led to an arrested her for driving under the influence.

2       In contrast, Ms. Quitmeyer asserts that she made a wrong turn in the Fort Baker area and
3  became lost. *See* Declaration of Carol Quitmeyer ("Quitmeyer Decl."), attached hereto as Exhibit B,
4  at ¶ 2. When she reached the barriers, she stopped and realized that she had to turn her vehicle
5  around in a small space. *Id.* at ¶4. Turning around safely required a series of three-point turns,
6  which she was in the process of executing when Officer Hardin seized her and her vehicle. *Id.* at ¶ 5.

7  **ARGUMENT**

8       Officer Hardin's verbal commands to Ms. Quitmeyer that she stop her vehicle and his
9  persistence in contacting her after she ignored this request constitute a seizure. That seizure was
10 illegal because the officer did not have reasonable suspicion to stop Ms. Quitmeyer, as Ms.
11 Quitmeyer was executing legal three-point turns in an unpopulated area. Since the seizure was
12 illegal, all evidentiary fruits of the stop must be excluded.

13     **I.**    **Officer Hardin's Conduct Amounted to a Seizure.**

14      "For purposes of the Fourth Amendment, a seizure occurs when a law enforcement officer, by
15 means of physical force or show of authority, in some way restrains the liberty of a citizen." *United*
16 *States v. Chan-Jimenez*, 125 F.3d 1324, 1326 (9th Cir. 1997) (citing *Florida v. Bostick*, 501 U.S.
17 429, 434 (1991)). A law enforcement officer has restrained the liberty of an individual when, taking
18 into account all the circumstances surrounding the encounter, "a reasonable person would have
19 believed that he is not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).
20 Whether someone felt free to ignore the police's requests for cooperation – and therefore was seized
21 for Fourth Amendment purposes – is essentially "a factual inquiry dependent upon the totality of the
22 circumstances." *United States v. Patino*, 649 F.2d 724, 727 (9th Cir. 1981) (*abrogation on other*
23 *ground recognized by United States v. $25,000 U.S. Currency*, 845 F.2d 857 (9th Cir. 1988)).

24      The Supreme Court and this Circuit have provided some guidance to lower courts by
25 identifying specific criteria to consider when conducting the inquiry. For example, in *Mendenhall*,
26 the Court explained that "the use of language or tone of voice" could indicate that "compliance with

the officer's request might be compelled." *Mendenhall*, 446 U.S. at 554.  The Ninth Circuit has held that when an officer persists after a citizen initially refuses to comply with his requests, that citizen may reasonably conclude that he is not free to continue to ignore the officer.  In *Morgan v. Woessner*, an agent approached a passenger in an airport and demanded that he accompany him because he was the subject of a drug investigation.  997 F.2d 1244, 1248 (9th Cir. 1993).  When the passenger refused, the officer told him "you are coming with me." *Id.*  At the moment that the police officer persisted after the passenger expressed an unwillingness to cooperate, the encounter became a seizure.  *Id.* at 1254.  The Ninth Circuit explained:

> When a citizen expresses his or her desire not to cooperate, continued questioning cannot be deemed consensual. In this case, according to [Officer] Searle himself, [passenger] Morgan never consented or otherwise conveyed a willingness to cooperate with Searle. Rather, Searle testified that after he approached Morgan, Morgan indicated in no uncertain terms that he did not want to be bothered.

*Id.* at 1253.  In addition to tone of voice and persistence, courts look to whether the officer made physical contact with the citizen.  The Ninth Circuit has called "the use of physical means to restrain a person's movement" the "most obvious form of seizure" within the meaning of the Fourth Amendment.  *United States v. Sokolow,* 831 F.2d 1413, 1416 (9th Cir. 1987) (*reversed on other grounds by United States v. Sokolow*, 490 U.S. 1 (1989)).

The Third Circuit has considered facts very similar to the present case, and concluded that a reasonable person sitting in a car would not feel free to ignore an officer's repeated commands to roll down the window.  *Johnson v. Campbell*, 332 F.3d 199, 206 (3d Cir. 2003).  In that case, an officer approached a parked car and motioned for its occupant to roll down his window.  The occupant refused, prompting the officer to repeat his request.  *Id.* at 203.  The court concluded that the occupant was seized under the meaning of the Fourth Amendment:

> [I]t became clear that [occupant] Johnson could not refuse [Officer] Campbell's requests. Although Johnson may have felt free to decline, and in fact did attempt to decline, Campbell's intial request to roll down the window, the very next moment, when Campbell persisted rather than accepting Johnson's choice to not acquiesce, the interaction became a stop.

*Id.* at 206.  And since the officer lacked a reasonable, articulable suspicion that Johnson was engaged

in criminal activity, the seizure was unconstitutional. *Id.* at 209.

Here, under Officer Hardin's version of events, the stop of Ms. Quitmeyer constituted a seizure. Officer Hardin himself describes the encounter in his police report as a "VEHICLE STOP." *See* Supplemental Report, Exhibit A. The report states that after Ms. Quitmeyer ignored Officer Hardin's attempts to get her attention by shining a flashlight into her car, he "gave loud verbal commands for her to stop the vehicle." *Id*. According to Officer Hardin, Ms. Quitmeyer refused to acquiesce, thus requiring him to make "physical contact with the vehicle" to stop Ms. Quitmeyer from making her turn. *Id*. This encounter had at least three indicia of a seizure: 1) the officer's use of a loud, authoritative voice, 2) his persistence after Ms. Quitmeyer's refusal to comply, and 3) his resort to physical contact with her vehicle. Like the occupant of the parked vehicle in *Johnson*, a reasonable person in Ms. Quitmeyer's position would not have felt free to refuse Officer Hardin's requests after he persisted in his efforts to make contact with her.[1] Thus she was "seized" for Fourth Amendment purposes.

### II.   Officer Hardin Did Not Have Reasonable Suspicion that Ms. Quitmeyer Was Engaged in Criminal Activity.

The Fourth Amendment limits an officer's ability to detain and question even persons suspected of criminal activity. Before the officer may initiate a traffic stop, he must have reasonable suspicion to believe that a traffic violation has occurred. *United States v. Colin,* 314 F.3d 439, 442 (9th Cir. 2002). *See United States v. Whren,* 517 U.S. 806, 806, 819 (1996) (upholding traffic stop for failing to signal a turn, among other traffic violations); *United States v. Willis,* 431 F.3d 709, 715 (9th Cir. 2005) (concluding that officers could stop a driver after he made an illegal U-turn); *United States v. King,* 244 F.3d 736, 741-42 (9th Cir. 2001) (suppressing evidence obtained from a stop based on officer's mistaken belief that driver had violated a traffic law).

Ms. Quitmeyer did not violate any traffic laws by turning her vehicle around in the small

---

[1] Indeed, she so asserts in her declaration: "I did not believe I was free to leave the area after the officer ordered me to roll down the window." Quitmeyer Declaration, Exhibit B at ¶ 6.

space in front of the barrier. Instead, Ms Quitmeyer tried to turn around lawfully upon reaching a security barrier that she could not cross. Quitmeyer Decl., Exhibit B at ¶¶ 4-5. She did not attempt to navigate through the barrier nor did she get her vehicle get stuck anywhere. According to Ms. Quitmeyer, Officer Hardin did not observe anything on January 15, 2007 other than a lost driver executing a series of legal U-turns upon discovering that the road was blocked.

Nor did this maneuver exhibit any indicia of intoxication. An officer may reasonably suspect that someone is driving while intoxicated if he exhibits erratic behaviors despite technically obeying the traffic laws. In *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1115, 1120 (9th Cir. 2003), the Ninth Circuit found probable cause to stop a motorist suspected of driving while under the influence because he signaled without changing lanes, drove at erratic speeds, straddled the line dividing two lanes traveling in the same direction, wove within his own lane, and sat unusually close to the steering wheel. While in that case, each individual act was not itself illegal, taken together they furnished the officer with a reasonable suspicion that the driver might have been under the influence. *Id.* at 1120-21. Without such a constellation of factors, a driver must clearly have violated a traffic law to be stopped. Ms. Quitmeyer's behavior here is insufficient to give rise to a reasonable suspicion that she was driving while intoxicated or otherwise engaged in criminal activity. As such, Officer Hardin's seizure violated the Fourth Amendment.

### III. All Evidence of Ms. Quitmeyer's Intoxication Stemmed From the Illegal Stop, and Therefore Must Be Excluded.

Suppression of physical and testimonial evidence that results solely from an illegal seizure is required. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963). Here, all evidence that suggests Ms. Quitmeyer's intoxication – her speech and appearance, her verbal admission that she had been drinking, her failure to perform well on the field sobriety test, and the alcohol content of her blood sample – is the fruit of Officer Hardin's illegal stop. If he had not unlawfully detained Ms. Quitmeyer, he would not have been able to observe her appearance, hear her speak, detect alcohol on her breath, conduct the field sobriety test, and ultimately arrest Ms. Quitmeyer and draw a blood

DEF. MOT. TO SUPPRESS
No. CR 07-0296 MAG                                                                 6

1  sample.

2  Nor can facts discovered as the result of an illegal seizure be used to justify the seizure

3  retroactively. *See Moreno v. Baca*, 431 F.3d 633, 639-40 (9th Cir. 2005) (holding that facts

4  unknown to an officer at the time of a seizure can not be used retroactively to justify the intrusion as

5  reasonable). Since Officer Hardin lacked a reasonable suspicion that Ms. Quitmeyer was violating

6  any traffic law when he stopped her, any evidence that resulted from that encounter must be excluded

7  as fruit of an unlawful search.

## CONCLUSION

9  For the foregoing reasons, Ms. Quitmeyer respectfully requests that this Court suppress all

10  evidence and statements arising from her illegal seizure and arrest, occurring in violation of the

11  Fourth Amendment.

12  Dated: July 31, 2007

13  Respectfully submitted,

14  BARRY J. PORTMAN
    Federal Public Defender

15

16  /S/

17  ELIZABETH M. FALK
    Assistant Federal Public Defender