1  SCOTT N. SCHOOLS (SCBN 9990)
   United States Attorney
2
3  BRIAN J. STRETCH (CABN 163973)
   Chief, Criminal Division
4  WENDY THOMAS (NYBN 4315420)
   Special Assistant United States Attorney
5
   ELI SCHLAM
6  Law Clerk
7     450 Golden Gate Avenue, 11th Floor
      San Francisco, California  94102
8     Telephone:  (415) 436-6809
      Facsimile: (415) 436-7234
9     wendy.thomas@usdoj.gov
10 Attorneys for Plaintiff

11              UNITED STATES DISTRICT COURT

12              NORTHERN DISTRICT OF CALIFORNIA

13                 SAN FRANCISCO DIVISION

14 UNITED STATES OF AMERICA,        )    CR. No. 07-0296 MAG
                                    )
15        Plaintiff,                )    UNITED STATES' OPPOSITION TO
                                    )    DEFENDANT'S MOTION TO SUPPRESS
16        v.                        )    EVIDENCE
                                    )
17                                  )    Hearing Date: September 27, 2007
                                    )    Time:         11:00 a.m.
18 CAROL QUITMEYER,                 )    Judge:        Hon. Nandor J. Vadas
                                    )
19        Defendant.                )
                                    )    SAN FRANCISCO VENUE
20 _____)

21
                          **I. INTRODUCTION**
22
23        On May 15, 2007, the United States filed an Information charging Carol Quitmeyer

24 ("Quitmeyer" or "Defendant") with a violation of Title 36, Code of Federal Regulations, Section

25 4.23(a)(1), Driving Under the Influence of Alcohol, a Class B Misdemeanor, and a violation of

26 Title 36, Code of Federal Regulations, Section 4.23(a)(2), Operating a Motor Vehicle with a

27 Blood Alcohol Content over 0.08%.  Quitmeyer contends that Ranger Michael Hardin ('Ranger

   Hardin") violated her Fourth Amendment rights by stopping her without reasonable suspicion
28

1   that she had been, was presently, or was about to become engaged in criminal activity and
2   therefore all evidence collected after the stop should be suppressed.  Defendant's contentions are
3   incorrect and her motion to suppress should be denied.  The encounter between Ranger Hardin
4   and Quitmeyer was not a seizure and, even if it was, Ranger Hardin had reasonable suspicion to
5   stop Defendant's car because of the Defendant's erratic driving and the location of the incident.

6                                   ## II. STATEMENT OF FACTS

7       On January 13, 2007, at approximately 9:41, Ranger Hardin observed a red Volkswagen
8   bearing California license plate 3DCD497 drive past the public parking area and into the
9   serpentine barriers protecting the secured area surrounding the north anchorage of the Golden
10  Gate Bridge.  See Declaration of Ranger Michael Hardin, attached hereto as Exhibit A, at ¶ 3.
11  Ranger Hardin then observed the vehicle stop and attempt to turn around.  However the driver
12  was unable to execute the turn and instead the vehicle became wedged between the ditch and a
13  barricade. Id. at ¶ 5.

14      At this point Ranger Hardin approached the vehicle on foot and gave a verbal warning for the
15  driver to stop the vehicle.  He also shined his flashlight in the window to attract the driver's
16  attention. Id. at ¶ 8.  The driver continued attempting to execute the turn until Officer Hardin
17  made physical contact with the vehicle by knocking on the window. Id. at ¶ 9-10.

18      Upon contacting the driver, Ranger Hardin observed that the female operator was the sole
19  occupant of the vehicle.  He identified the driver using her California Driver's License as Carol
20  Quitmeyer. Id. at ¶ 11.  Ranger Hardin observed that Quitmeyer's eyes were bloodshot and that
21  she spoke with a slow tempo.  Ranger Hardin asked Quitmeyer if she had been drinking and she
22  stated that she had consumed "a few drinks." Id. at ¶ 12.

23      Ranger Hardin asked Quitmeyer to exit her vehicle and if she would perform some field
24  sobriety tests to demonstrate her ability to safely operate a vehicle. Id. at ¶ 13.  Quitmeyer
25  consented and Ranger Hardin administered several field sobriety tests which Quitmeyer failed.
26  Id. at ¶ 14.  Ranger Hardin then placed Quitmeyer under arrest for Operating a Motor Vehicle
27  while Under the Influence of Alcohol or Drugs.  Id. at ¶ 15.  Quitmeyer was transported to Park

28
    UNITED STATES' RESPONSE TO
    DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
    CR-07-0296 MAG                    2

1    Police Headquarters and advised of her <u>Miranda</u> rights.  Quitmeyer opted for a blood draw,

2    rather than an intoxilyzer breath test, so she was transported to the San Francisco County Jail

3    where the blood draw was performed.  She was then transported to the Marin County Jail where

4    she was booked with an order to be released when sober.  <u>Id.</u> at ¶ 16.

5        The blood sample provided by Quitmeyer was tested by the Forensic Laboratory Division of

6    San Francisco.  The Blood Alcohol Content of the sample was 0.19%.  <u>Id.</u> at ¶ 17.

7                              **III. ARGUMENT**

8            **A. Ranger Hardin's Encounter With Quitmeyer Did Not Rise To The Level**
             **Of A Seizure Because It Was Not A Result Of Means Intentionally Applied**
9            **To Restrain The Suspect.**

10       Defendant claims that Quitmeyer was seized when Ranger Hardin approached and knocked

11   on the window of the vehicle.  This contention ignores the fact that at that time Quitmeyer's

12   vehicle was already stuck between a barrier and a ditch.  <u>Id.</u> at ¶ 5.  As Ranger Hardin states in

13   his Declaration, the vehicle was "rocking" back and forth.  <u>Id.</u> at ¶ 9.  The car being trapped

14   between these barriers is not a seizure since a seizure must be the result of means intentionally

15   applied.  <u>See</u> <u>Bower v. County of Inyo</u>, 489 U.S. 593, 596 (1989);  <u>see also</u> <u>United States v.</u>

16   <u>Terry</u> 392 U.S. 1, 19 n. 16 (1968) ("Obviously, not all personal intercourse between policemen

17   and citizens involves 'seizures' of persons.  Only when the officer, by means of physical force or

18   show of authority, has in some way restrained the liberty of a citizen may we conclude that a

19   'seizure' has occurred.")

20       In <u>Brower</u>, the Supreme Court discusses the hypothetical situation where a defendant is

21   trapped by a police car that has accidently slipped its breaks and pinned the defendant against a

22   wall.  The Court concludes that no seizure has occurred since there cannot be an accidental

23   seizure; it must be a result of intentional action by the government.  Similarly here, Quitmeyer

24   getting her car stuck between the security barriers cannot give rise to a seizure since it was not a

25   result of means intentionally applied by Ranger Hardin.  Even though Ranger Hardin asked the

26   driver to stop rocking her vehicle, this request was moot since the vehicle was already stuck.  Ex.

27   A, at ¶ 5.

28

UNITED STATES' RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
CR-07-0296 MAG                3

1    Once the vehicle was stuck the encounter that followed was clearly a police-citizen

2    interaction that did not rise to the level of a seizure.  As the Court in <u>Morgan v. Woessner</u>, 997

3    F.2d 1244, 1252 (9th Cir. 1993) stated, there are three types of police encounters under the

4    Fourth Amendment.  While a <u>Terry</u> stop and an arrest require some level of suspicion of

5    wrongdoing, the first level, namely consensual police-citizen encounters, does not require any

6    suspicion because it is not a seizure. <u>Id.</u>  In such encounters the police officer approaches a

7    citizen and engages in conversation and can even ask to see identification.  <u>See</u> <u>I.N.S. v.</u>

8    <u>Delgado</u>, 466 U.S. 210, 216 (1984); <u>Florida v. Rodriguez</u>, 469 U.S. 1, 5-6 (1984).  These

9    interactions can be for the purpose of gathering information or providing assistance, both

10    essential police actions. <u>See</u> <u>U.S. v. Mendenhall</u>, 446 U.S. 544, 554 (1980).  During such a stop

11    the officers are not required to inform the citizen that he or she is free to leave or refuse to

12    answer as long as the totality of the circumstances do not indicate that cooperation is required.

13    <u>Id.</u> at 555.   The stop in this case clearly falls into the first category of police-citizen encounters.

14    Unlike a typical traffic stop, this encounter did not involve Ranger Hardin pulling over or

15    stopping Quitmeyer's vehicle because it was already stuck when Ranger Hardin approached the

16    vehicle.  Ex. A. at ¶ 5.  At no time did he reach for his weapon.

17    The Supreme Court and the Ninth Circuit have long recognized that, beyond criminal

18    investigation, police have a community caretaking function that justifies action without a warrant

19    and without suspicion of criminal conduct. <u>Cady v. Dombrowski</u>; 413 U.S. 433, 447 (1973);

20    <u>United States v. Bradley</u>; 321 F.3d 1212, 1214-15 (9th Cir. 2003).  Police officers acting under

21    the community caretaking function need only point to specific and articulable facts to justify

22    their reasonable belief that a citizen might need aid and show that the action is not primarily

23    motivated by intent to arrest and seize evidence.  Under the community caretaker doctrine, the

24    reasonable suspicion must be of need, not criminal activity. See <u>People v. Ray</u> 21 Cal.4th 464,

25    471 (1999) ("Officers view the occupant as a potential victim, not as a potential suspect.")  Here,

26    Ranger Hardin approached Quitmeyer's vehicle after it became clear that she was stuck.  Ranger

27    Hardin then engaged the Defendant in conversation and asked for her identification.  Such a stop

28

UNITED STATES' RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
CR-07-0296 MAG                          4

1   was completely consistent with a consensual police-citizen encounter that does not rise to the

2   level of a seizure.

3                **B. Even If The Stop Was A Result Of Means Intentionally Applied, The Stop
                 Was Not A Seizure Despite Quitmeyer's Belief That She Was Not Free To
4                Leave The Area, Since This Belief Was Not Objectively Reasonable.**

5       While Quitmeyer may now claim that she did not believe she was free to leave the area, (Def.

6   Mot. Ex. B P.2), an examination of the totality of the circumstances of the incident suggest that

7   she was not seized because this belief is not reasonable.  A person is seized "only if, in view of

8   all of the circumstances surrounding the incident, a reasonable person would have believed that

9   he was not free to leave." <u>Mendenhall</u>, 446 U.S. at 554.

10      The Defendant argues that her belief was reasonable because the "encounter had at least

11  three indicia of a seizure: 1) the officers use of a loud authoritative voice, 2) his persistence after

12  Ms. Quitmeyer's refusal to comply, and 3) his resort to physical contact with her vehicle." (Def.

13  Mot. 5:8-10).

14      With regards to the first suggested indicia, Ranger Hardin does state that he gave a loud

15  verbal warning for Defendant to stop her vehicle.  However such a statement does not

16  automatically mean that a seizure has occurred. <u>See</u> <u>Id.</u> ("Examples of circumstances that <u>might</u>

17  indicate a seizure...the use of language or tone of voice indicating that compliance with the

18  officer's request is compelled") (emphasis added).  Defendant has failed to show that the

19  warning was given in a manner that would indicate that compliance was compelled.  All we

20  know about the statement was that Ranger Hardin asked Defendant to stop and that he did it in a

21  loud voice.  Ranger Hardin could have given this command as part of his attempt to assist

22  Quitmeyer in freeing her vehicle from its trapped position.  Even more importantly this statement

23  was moot since Quitmeyer's vehicle was already stopped by the barriers.  The statement was not

24  a command indicating that Quitmeyer could not leave, but a statement that she should stop

25  rocking her car back and forth since it was ineffectual in getting the vehicle out from between

26  the barrier and the ditch.  Finally, based on the fact that Quitmeyer continued to rock the car

27  back and forth until Ranger Hardin knocked on the window to get her attention (and then she

28

UNITED STATES' RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

1    immediately stopped), Ex. A at ¶ 9-10, it is likely that Quitmeyer never heard Ranger Hardin ask

2    her to stop the vehicle.  If she never heard the command then it could not play a role in her

3    claimed belief that she was not free to leave.

4        With regards to the second suggested indicia, Defendant claims that Ranger Hardin's

5    persistence in asking her to stop her vehicle means that a seizure occurred.  However, unlike in

6    the case cited by Defendant, Morgan, 997 F.2d, Quitmeyer never refused to comply with the

7    instruction.  In Morgan, the passenger affirmatively and unequivocally refused to go with the

8    officer and the officer repeatedly ordered Morgan to come with him and even physically grabbed

9    him.  The Court's decision was based on the fact that "[w]hen a citizen expresses his or her

10    desire not to cooperate, continued questioning cannot be deemed consensual." Id. at 1253

11    (emphasis added).  In the instant case, Quitmeyer never expressed her desire not to cooperate.  It

12    would have been completely reasonable for Ranger Hardin to believe that Quitmeyer did not

13    hear his request for her to stop the vehicle and therefore was not repeating his request in order to

14    compel her to obey, but to get her attention.  In fact, once Ranger Hardin spoke directly to

15    Quitmeyer, she responded immediately and there was no expression that she would refuse to

16    cooperate.  This is in direct contrast to the other case cited by Defendant, Johnson v. Campbell.

17    332 F.3d 199 (3d Cir. 2003), where a driver was found to be seized after the officer directly

18    asked the driver to roll down the window and officer repeated the request after the driver

19    refused.  Defendant's characterization of Ranger Hardin's actions as analogous to the actions of

20    the officer in Morgan and Johnson, is inaccurate because Ranger Hardin's repeated requests to

21    stop the vehicle were not in response to an expression by the Defendant that she would not

22    cooperate.

23        With regards to the third suggested indicia, Defendant claims that Ranger Hardin's physical

24    contact with the vehicle means that a seizure occurred.  The physical contact that Defendant

25    refers to is Ranger Hardin tapping on the passenger side window. Ex. A at ¶ 10.  The Defendant

26    has tried to analogize this "physical contact" to the type of physical contact referred to by the

27    Ninth Circuit in United States v. Sokolow, 831 F.2d 1413 (9th Cir. 1987), rev'd on other

28

UNITED STATES' RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

1    grounds, United States v. Sokolow, 490 U.S. 1 (1989).  This is a poor comparison since the
2    physical contact dealt with in that case was contact that physically restrained the person's
3    movement.  In no way did the physical contact of tapping on the window restrain Defendant or
4    her vehicle and therefore the physical contact in this case is not the kind that the Ninth Circuit
5    saw as indicative of a seizure in Sokolow.

6        The encounter in this case did not have the indicia of a seizure.  The encounter consisted
7    entirely of Ranger Hardin knocking on the window of Quitmeyer's vehicle and asking to see her
8    driver's license.  This encounter had none of the coercive indicators of a seizure as described by
9    the Supreme Court in Mendenhall, 446 U.S. at 554 ("Examples of circumstances that might
10   indicate a seizure, even where the person did not attempt to leave, would be the threatening
11   presence of several officers, the display of a weapon by an officer, some physical touching of the
12   person of the citizen, or the use of language or tone of voice indicating that compliance with the
13   officer's request might be compelled").  The Court is very clear that "[i]n the absence of some
14   such evidence, otherwise inoffensive contact between a member of the public and the police
15   cannot, as a matter of law, amount to a seizure of that person." Id. at 555.

16       A reasonable person in Quitmeyer's circumstances would not have believed that she was not
17   free to leave and therefore it was not a seizure requiring reasonable suspicion until Ranger
18   Hardin observed signs of intoxication which gave him reasonable suspicion that Quitmeyer was
19   driving while under the influence.

20   **C. Even If The Encounter Was A Seizure, There Was Reasonable Suspicion**
     **To Support Ranger Hardin Making the Stop.**

21

22                      **1. Reasonable Suspicion Based On Erratic Driving.**

23       Even if the Court determines that the encounter between Ranger Hardin and Quitmeyer did
24   rise to the level of a seizure then, as Defendant admits, this seizure would only have to be
25   supported by reasonable suspicion of criminal activity. (Def. Mot. 5:16-23)  While Defendant
26   asserts that the only thing that Ranger Hardin observed was "a lost driver executing a series of
27   legal U-turns," (Def. Mot. 6:4-5), the evidence does not support this statement.

28       Ranger Hardin had reasonable suspicion to stop Quitmeyer because her behavior in operating

UNITED STATES' RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

the vehicle was erratic.  Quitmeyer drove her vehicle into an area protected by a series of security barriers stacked in an overlapping pattern. Ex. A. at ¶ 4.  Quitmeyer was unable to navigate the curved road created by the barriers and attempted to turn around half-way through the barriers.  She was unable to execute the turn necessary to leave the area and became "wedged" between the ditch and the barricade.  She then proceeded to rock the car back and forth repeatedly until contacted by Ranger Hardin. Ex. A. at ¶ 5.  Under the case that Defendant cites, United States v. Fernandez-Castillo, 324 F.3d 114 (9th Cir. 2003), reasonable suspicion of intoxication can be based on erratic driving behavior even if that driving behavior is legally permissible.  Similarly, the Supreme Court found in United States v. Arvizu, 534 U.S. 266 (2002), that officers had reasonable suspicion to stop a mini-van even though the only basis for the suspicion was conduct that could individually be "susceptible to innocent explanation" Id. at 276, (in Arvizu the innocent explanation was a family on a vacation).  The Court went on to say that "[a] determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct" Id.  While the erratic driving of Quitmeyer could have had the innocent explanation put forward by Defendant in her motion, it also was sufficient to give rise to reasonable suspicion that Quitmeyer was operating her vehicle while intoxicated under the rule from Fernandez-Castillo.

### 2. Reasonable Suspicion Based on Violation of a Closed Area.

Even if Ranger Hardin did not have the above discussed reason to stop Quitmeyer, his stop would have been valid because there was reasonable suspicion that the vehicle was in a closed area and could be involved in terrorist activity.  Ranger Hardin observed the vehicle approaching and crossing the security barrier surrounding the north anchorage of the Golden Gate Bridge. Ex. A. at ¶ 7.  As one of the most prominent sites in San Francisco, if not the United States, the Golden Gate Bridge is among the top potential targets for terrorist activity.  The National Park Service is empowered to close certain areas to public use. 36 C.F.R. § 1.5(a)(1).  Violating a closure or access restriction is prohibited. 36 C.F.R. § 1.5(f).  See also 33 C.F.R. § 165.1187 (Establishes security zones in the water surrounding the Golden Gate Bridge for national security

1    reasons since the Bridge is a high visibility target).  The National Park Service lists the Golden

2    Gate Bridge anchorage and pylons as one of the areas closed to public entry, except when

3    accompanied by a park official, or when the Superintendent authorizes entry closure.  See

4    Superintendant's Compendium of Designations, Closures, Permit Requirements and Other

5    Restrictions Imposed Under Discretionary Authority, attached hereto as Exhibit B, P. 4.

6    Observing a vehicle approach the north anchorage of the Golden Gate Bridge, Ranger Hardin

7    had reasonable suspicion that the vehicle was violating a restricted area.  Just as in Arvizu,

8    activity that has innocent explanations can give rise to reasonable suspicion of criminal activity.

9    This is particularly true when the location of the activity adds to the likelihood that criminal

10    activity is underfoot.  In Arvizu, the vehicle was suspected of smuggling illegal immigrants in

11    part because it was driving in an area known for smuggling.  Similarly in this case, the location

12    of the vehicle added to the suspicion that it was in a restricted area and could be involved in

13    terrorist activity.  Therefore Ranger Hardin's actions in investigating why the vehicle was in the

14    area of the North Anchorage was reasonable based on his observations and the location of the

15    encounter.

16        As discussed above there are multiple different criminal activities for which Ranger Hardin

17    had reasonable suspicion to believe the vehicle he observed was engaged.  As the Supreme Court

18    ruled in United States v. Whren, 517 U.S. 806 (1996), a court should not look into the subjective

19    intent of the officer making the traffic stop in determining whether the stop was reasonable; the

20    only question is whether there is reasonable suspicion of some criminal activity.  Once this

21    threshold is met, a traffic stop is permissible under the Fourth Amendment even if it gives rise to

22    an arrest for another crime.  Id.

23        **D. Since The Encounter Was Not A Seizure, And Even If It Was A Seizure,**
         **It Was Supported By Reasonable Suspicion, The Subsequent Evidence**
24        **Gathered Should Not Be Suppressed.**

25        Since the encounter between Ranger Hardin and Quitmeyer did not violate her Fourth

26    Amendment rights, the evidence collected by Ranger Hardin should not be suppressed.  Once

27    Ranger Hardin observed the symptoms of intoxication, her speech and appearance, he had

28
     UNITED STATES' RESPONSE TO
     DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
     CR-07-0296 MAG                9

reasonable suspicion that she was driving while under the influence.  Defendant does not

challenge that Ranger Hardin's actions in performing the Field Sobriety Tests was improper

since there was clearly grounds to reasonably suspect that Quitmeyer was driving while under

the influence once Ranger Hardin contacted Quitmeyer.  Therefore, once the Court determines

that the initial contact was not unreasonable, either because it was not a seizure or because it was

a stop supported by reasonable suspicion, there are no grounds to exclude the evidence of

Quitmeyer's intoxication.

## IV. CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court deny

Defendant's motion to suppress all evidence and statements arising from the encounter between

Ranger Hardin and the Defendant.

Dated: 8/13/07

Respectfully Submitted

SCOTT N. SCHOOLS
United States Attorney

_____/s/_____
WENDY THOMAS
Special Assistant United States Attorney

UNITED STATES' RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
CR-07-0296 MAG                    10