BARRY J. PORTMAN
Federal Public Defender
ELIZABETH M. FALK
Assistant Federal Public Defender
450 Golden Gate Avenue
San Francisco, CA 94102
Telephone: (415) 436-7700

Counsel for Defendant QUITMEYER

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0296 MAG |
| | ) | |
| Plaintiff, | ) | **SUPPLEMENTAL BRIEF IN** |
| | ) | **SUPPORT OF DEFENDANT'S** |
| v. | ) | **MOTION TO SUPPRESS** |
| | ) | |
| CAROL QUITMEYER, | ) | Honorable Nandor J. Vadas |
| | ) | |
| Defendant. | ) | |
| | ) | |

**INTRODUCTION**

Carol Quitmeyer is charged with operating a motor vehicle under the influence of alcohol, in violation of 36 C.F.R. § 4.23(a)(1). On the night of her arrest, the arresting officer initiated a *Terry* seizure of Ms. Quitmeyer when he ordered her to stop her vehicle and knocked on her window. The seizure was unlawful because the officer lacked a reasonable suspicion that Ms. Quitmeyer was engaged in criminal conduct. Any evidence obtained after the stop of Ms. Quitmeyer – including the police officer's observation that she spoke slowly and had bloodshot eyes, Ms. Quitmeyer's verbal admission that she had been drinking, her inability to complete a field sobriety test, and her blood sample – must be suppressed as tainted fruit of the illegal seizure.

1

1   Ms. Quitmeyer filed a motion to suppress on September 27, 2007.  The Court held an

2   evidentiary hearing on October 19, 2007.  In light of the facts brought out at the hearing, the

3   Court granted parties the opportunity to file additional briefing.  Ms. Quitmeyer now files this

4   supplemental brief in support of the motion to suppress.

5                          **STATEMENT OF FACTS**

6       The facts stated herein arise from the evidentiary hearing held by this Court on October

7   19, 2007.  On January 13, 2007, United States Park Ranger Hardin observed Ms. Quitmeyer's

8   "very small" Volkswagen Cabriolet (*see* Transcript of Proceedings for the Evidentiary Hearing,

9   hereinafter "T", attached hereto as Exhibit A, at 32:1-4) enter a "series of serpentine barriers"

10  outside the security gate near the north anchorage of the Golden Gate Bridge.  (T 5-6).  The

11  barriers are in place to prevent vehicle traffic from gaining enough speed to ram through the

12  security gate.  (T 10:11-13).  The barricades were not obviously placed across the entire road;

13  rather, a vehicle could navigate around them.  (T 12:12-20).  There was no sign or flashing lights

14  at the beginning of the barriers to indicate that "crossing into that area was somehow wrongful."

15  (T 12-13).

16      Ranger Hardin approached Ms. Quitmeyer's vehicle when it "stopped and began to

17  maneuver to turn around."  (T 6:9-10).  According to Ranger Hardin, Ms. Quitmeyer was trying

18  to make a multiple-point turn, but was "impeded" by one of the barriers.  (T 6:22-23).  Her car

19  was not "stuck."  (T 15:22).  Hardin approached Ms. Quitmeyer in full uniform (T 18:22-23),

20  shined his flashlight at her (T 6:12-13), used "loud, verbal" commands for her to "stop," (T 6:14;

21  18:13; 43:2-3), knocked on her window (T 6:25), and told her to roll it down (T 43:13).[1]

22

23      [1]There is some dispute as to whether Ranger Hardin knocked on Ms. Quitmeyer's driver's

24  side or passenger's side window.  Ranger Hardin claims that he knocked on the passenger's side
    window (T 7:4), but Ms. Quitmeyer maintains that he walked around the front of her car and

25  knocked on the driver's side (T 43:22-23; 46-47).  For the purposes of this motion, however, this
    disputed question of fact is irrelevant; all parties concur that Ranger Hardin knocked on a

26  window of the car.

                                                    2

Approaching Ms. Quitmeyer, Ranger Hardin's intention was "to try to get the vehicle to stop moving." (T 20-21).

Initially, Ms. Quitmeyer ignored Ranger Hardin's contacts. When she saw his flashlight, she continued trying to make her three-point turns. (T 42:13-24). She stopped moving the vehicle only when she saw that Ranger Hardin "was continuing toward [her] and yelling at [her] to stop and then came up and knocked on the car window." (T 43:8-11). Upon stopping Ms. Quitmeyer, Hardin observed that her "eyes were bloodshot" and she "spoke with a very slow, deliberate tempo." (T 7:8-10). Ms. Quitmeyer complied with Ranger Hardin's request that she perform a series of field sobriety tests. The results of these tests led to an arrest for driving under the influence.

Ms. Quitmeyer testified that she made a wrong turn in the Fort Baker area and became lost. (T 36-37). Eventually, she came to the barricades. (T 40:20-23). In the dark, she could see only one barricade, and she went around it. (T 40-41). After passing the barricade, she realized that it was only the first in a series. (T 41:11-14). She then pulled through one more barricade and began "making a series of three-point turns to turn around and to pull out of the area going forward." (T 41:16-22). At no time was the vehicle "stuck." (T 15:22). In fact, Ranger Hardin's supervisor was able to move the vehicle out of the barriers without the assistance of a tow truck. (T 28:1-10).

## ARGUMENT

Ranger Hardin seized Ms. Quitmeyer when he verbally commanded her to stop her vehicle and ordered her to roll down her window. The seizure was illegal because the ranger did not have reasonable suspicion that Ms. Quitmeyer was engaged in any criminal activity, as she was executing a legal turn in an unpopulated area. Further, the seizure cannot be justified by the community caretaking doctrine, as Ms. Quitmeyer was neither seriously injured nor threatened with serious injury. All evidentiary fruits obtained as a result of the seizure must accordingly be excluded.

**I.    Ms. Quitmeyer Was Subject to a *Terry* Seizure When Ranger Hardin Ordered Her to Stop Her Vehicle and Roll Down Her Window**

The Supreme Court has long held that vehicle traffic stops must meet the Fourth Amendment requirement of at least a reasonable suspicion of criminal conduct. *See, e.g., Delaware v. Prouse,* 440 U.S. 648, 653 (1979); *see also Whren v. United States,* 517 U.S. 806, 809-10 (1996) ("Temporary detention of individuals during the stop of an automobile by the police, even if for only a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of the Fourth Amendment."). On the evening of January 13, 2007, Ms. Quitmeyer was subject to such a seizure.

**A.    Contrary To The Government's Assertion, Ranger Hardin's Stop of Ms. Quitmeyer Was The Result Of Means Intentionally Applied**

A seizure occurs "only when there is a governmental termination of freedom of movement through means intentionally applied." *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989). In support of its Response to Defendant's Motion to Suppress Evidence, the government argues that Ranger Hardin did not seize Ms. Quitmeyer because he did not intentionally apply means to stop her. (United States' Response to Def. Mot. 3:14-15). The government has argued that Ms. Quitmeyer's car was "already stuck between a barrier and a ditch" when Ranger Hardin approached the vehicle. *Id.* at 3:10-12. However, the facts revealed at the evidentiary hearing contradict this statement. Ms. Quitmeyer's vehicle was not "stuck" (T 15:22), and Ranger Hardin himself agreed that his "intention was to try to get [Ms. Quitmeyer's] vehicle to stop moving." (T 20-21). Ms. Quitmeyer did not stop her vehicle because it was "stuck." Rather, she stopped because Ranger Hardin intentionally applied means to accomplish that stop.

//

//

//

4

1

2

### B.    Ms. Quitmeyer Reasonably Believed That She Was Not Free To Terminate The Encounter With Ranger Hardin

3

4

5

A law enforcement officer seizes an individual within the meaning of the Fourth Amendment when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446

6

7

8

U.S. 544, 554 (1980). The Supreme Court has acknowledged that "the use of language or tone of voice indicating that compliance with the officer's request might be compelled" is a circumstance that might indicate a seizure. *Id.* [2]

9

10

11

12

13

14

15

Ranger Hardin shined his flashlight through Ms. Quitmeyer's window, but she continued to execute her three-point turns, indicating that she did not wish to engage in a police encounter. When she failed to stop, Hardin approached her vehicle in full uniform, yelled at her to stop, knocked on her window, and told her to roll it down. (T 43:8-11). At that point, Ms. Quitmeyer came to believe that she was not free to disobey Ranger Hardin's commands. (T 43:14-16). In light of the totality of the circumstances, this belief was reasonable. Accordingly, Ranger Hardin seized Ms. Quitmeyer for purposes of the Fourth Amendment when he approached her car, yelled at her to stop, and knocked on her window.

16

17

18

### II.    The Seizure Occurred in Violation of Ms. Quitmeyer's Fourth Amendment Rights Because Ranger Hardin Lacked Reasonable Suspicion that Ms. Quitmeyer Was Engaged In Criminal Conduct

19

20

21

22

23

Ms. Quitmeyer was subject to an investigative seizure by Ranger Hardin. To justify the stop, Hardin must have had a reasonable suspicion that Ms. Quitmeyer was involved in criminal activity. *See United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002). Reasonable suspicion is formed by "specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity."

24

25

26

---

[2] *See also United States v. Ingram*, 151 Fed. Appx. 597 (9th Cir. 2005) (unpublished decision)(order by police officer for driver to roll down the window of a parked car held to be a seizure).

*Id.* at 442 (citing *United States v. Lopez-Soto*, 205 F.3d 1101, 1105 (9th Cir. 2000)). Because there was no basis for suspecting that Ms. Quitmeyer was engaged in any crime, Hardin lacked the requisite reasonable suspicion to stop her.

In *Colin*, a police officer observed the defendant's vehicle "drifting" while driving on the interstate highway. *Colin*, 314 F.3d at 441. The officer pulled the car over for possible violations of California Vehicle Code prohibitions against lane straddling and driving under the influence. *Id.* The Ninth Circuit found the stop unlawful because the defendant had not actually violated the statute against lane straddling, and the officer therefore lacked reasonable suspicion to stop the defendant on that basis. *Id.* at 445. The court further held that the "evidence of weaving" was insufficient for the officer to harbor a reasonable suspicion that the defendant was driving under the influence. *Id.*

In another traffic stop case, a police officer noticed a car driving in California with only one Michigan license plate. *United States v. Twilley*, 222 F.3d 1092, 1094 (9th Cir. 2000). The officer pulled over the car because he mistakenly believed that Michigan issued two license plates, and that the defendant was violating the California Vehicle Code by failing to display two plates. *Id.* The Ninth Circuit held that the stop was unlawful because the officer lacked reasonable suspicion. *Id.* at 1096. The court ruled that "in this circuit, a belief based on a mistaken understanding of the law cannot constitute the reasonable suspicion required for a constitutional traffic stop." *Id.* The driver's conduct did not "in any way, shape or form constitute a crime." *Id*; *see also United States v. Ogilvie*, 527 F.2d 330, 332 (9th Cir. 1975) (holding that the officer lacked reasonable suspicion to stop defendant's car, where there was no evidence that she "drove fast, as if running away, disobeyed any traffic laws, or otherwise drove in an unusual or erratic manner.").

Ms. Quitmeyer, like the defendant in *Ogilvie*, "did what she had a legal right to do, reverse the direction of her travel, and did it in the only legal way that she could on that stretch of

highway." *See Ogilvie*, 527 F.2d at 332.  Like the defendants in *Colin* and *Twilley*, Ms.

Quitmeyer was not committing any traffic violation when she was seized.  Ranger Hardin makes

no allegation that he witnessed her committing any traffic violation.  Therefore, he seized Ms.

Quitmeyer's vehicle without reasonable suspicion that she was engaged in any criminal behavior,

violating her Fourth Amendment rights.

**III.**     **The Seizure Of Ms. Quitmeyer Without Reasonable Suspicion Cannot Be Justified**
             **By The Community Caretaking Exception**

In *Mincey v. Arizona*, the Supreme Court recognized police officers' community

caretaking function.  437 U.S. 385, 392 (1978).  The Court stated that the Fourth Amendment

does not bar police officers from responding to emergency situations.  *Id.*  Ms. Quitmeyer,

however, was not in an "emergency situation demanding immediate action," and Ranger

Hardin's seizure cannot be justified on those grounds.  *See id.* at 391.

In support of its argument that Ranger Hardin's actions were acceptable under the

community caretaking exception, the government states that "officers acting under the

community caretaking function need only point to specific and articulable facts to justify their

reasonable belief that a citizen might need aid and show that the action is not primarily motivated

by intent to arrest and seize evidence." (United States Response to Def. Mot. 4:20-23).

However, the government misstates the community caretaking doctrine.  The government relies

on a California Supreme Court decision, *People v. Ray*, 21 Cal. 4th 464 (1999).  That opinion is

not binding on this court.  Further, both the Ninth Circuit and the Supreme Court of the United

States have issued community caretaking decisions since *Ray*, announcing a higher standard for

the community caretaking exception.  *See Brigham City v. Stuart*, 126 S.Ct. 1943 (2006); *United

States v. Black*, 482 F.3d 1035 (9th Cir. 2007).

Contrary to the government's argument, whether the officer was "motivated by intent to

arrest and seize evidence" is irrelevant.  *Brigham City*, 126 S.Ct. at 1948.  The officer's intent

does not matter.  The court's inquiry is whether the officer has an "*objectively reasonable* basis

for believing that an occupant is *seriously injured or imminently threatened with such injury*." *Id*. at 1945 (emphases added); *see also United States v. Black*, 482 F.3d at 1039 (upholding warrantless entry because the police reasonably believed that the defendant's girlfriend "could have been inside the apartment, badly injured and in need of medical attention").

For Ranger Hardin's seizure of Ms. Quitmeyer to fall under the community caretaking exception, there must be an "objectively reasonable basis" for believing that she was either "seriously injured or imminently threatened with such injury."  Ranger Hardin could not have reasonably believed that there was any such emergency.  Ms. Quitmeyer was not injured; nor was she threatened in any way.  Therefore, the community caretaking doctrine cannot be used to justify her unlawful seizure.

## IV.    All Evidence of Ms. Quitmeyer's Intoxication Stemmed From The Illegal Stop and Seizure, And Must Be Suppressed

Physical and testimonial evidence obtained through illegal seizure must be suppressed. *Wong Sun v. United States*, 371 U.S. 471, 485 (1963).  Here, all evidence that suggests Ms. Quitmeyer's intoxication – her speech and appearance, her verbal admission that she had been drinking, her failure to perform well on the field sobriety test, and the content of her blood sample – is the fruit of Ranger Hardin's illegal seizure.  If he had not unlawfully detained Ms. Quitmeyer, he would not have been able to observe her appearance, hear her speak, conduct field sobriety tests, and ultimately arrest Ms. Quitmeyer and draw a blood sample.

Moreover, facts discovered as the result of an illegal seizure cannot be used to justify the seizure retroactively.  *Moreno v. Baca,* 431 F.3d 633, 639-40 (9th Cir. 2005).  Since Hardin lacked reasonable suspicion that Ms. Quitmeyer was violating any traffic law when he stopped her, any evidence that resulted from that encounter must be excluded as fruit of an unlawful seizure.

//

//

1

**CONCLUSION**

2          For the foregoing reasons, Ms. Quitmeyer respectfully requests that this Court suppress

3   all evidence and statements arising from her illegal seizure and arrest, which occurred in

4   violation of the Fourth Amendment.

5

6   Dated: November 2, 2007

7                                   Respectfully submitted,

8                                   BARRY J. PORTMAN
                                    Federal Public Defender
9

10                                         /S/

11                                  ELIZABETH M. FALK
                                    Assistant Federal Public Defender
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26