SCOTT N. SCHOOLS (SCBN 9990)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

WENDY THOMAS (NYBN 4315420)
Special Assistant United States Attorney

LAURA TERLOUW
Law Clerk

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102
Telephone: (415) 436-6488
Facsimile: (415) 436-7234
Email: wendy.thomas@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br> Plaintiff, <br> v. <br> CAROL J. QUITMEYER, <br> Defendant. | No. CR 07-0296 MAG <br><br> UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS <br><br> Honorable Nandor J. Vadas |

## I. INTRODUCTION

On May 15, 2007, the United States filed an Information charging Carol Quitmeyer ("Quitmeyer") with a violation of Title 36, Code of Federal Regulations, Section 4.23(a)(1), Driving Under the Influence of Alcohol, and a violation of Title 36, Code of Federal Regulations, Section 4.23(a)(2), Operating a Motor Vehicle with a Blood Alcohol Content over 0.08%, both Class B Misdemeanors. Quitmeyer filed a Motion to Suppress on July 31, 2007,

UNITED STATES' OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF IN
SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS
CR 07-0296 MAG

1  and the Court held an evidentiary hearing on October 19, 2007.  Quitmeyer contends that Ranger
2  Michael Hardin ("Ranger Hardin") seized Quitmeyer unlawfully because he lacked reasonable
3  suspicion that she was engaged in criminal conduct, and therefore any evidence obtained after
4  the illegal seizure must be suppressed as tainted fruit of the illegal seizure.  Quitmeyer's
5  contentions are incorrect and her Motion to Suppress should be denied.  The encounter between
6  Ranger Hardin and Quitmeyer did not constitute a seizure: it was not the result of means
7  intentionally applied to restrain her, and Quitmeyer's belief that she was not free to terminate the
8  encounter was objectively unreasonable.  In addition, the encounter was a consensual police-
9  citizen encounter, and no reasonable suspicion is required.  Finally, even if the encounter
10 constituted a seizure, there was reasonable suspicion to support the seizure.

## II. STATEMENT OF FACTS

12      The facts stated herein arise from the evidentiary hearing held by this Court on October
13 19, 2007 and from Ranger Hardin's Declaration.  On the evening of January 13, 2007, Ranger
14 Hardin observed a red Volkswagen bearing California license plate number 3DCD497 drive past
15 the public parking area and into the serpentine barriers protecting the secured area surrounding
16 the north anchorage of the Golden Gate Bridge.  See Declaration of Ranger Michael Hardin
17 ("D"), Government's Opposition to Motion to Suppress Exhibit A, at ¶ 3; Transcript of
18 Proceedings for the Evidentiary Hearing ("T"), Defendant's Supplemental Brief Exhibit A, at
19 5: 23-25; 6: 1-4.  Once the vehicle had driven about halfway through the barriers, it attempted to
20 turn around.  D: ¶ 5; T 6: 5-7.  While the vehicle was not stuck in the ditch, its progress was
21 impeded due to the ditch at the rear of the car and the serpentine barrier at the front of the car.
22 T 6: 6-7, 19-23; T 15: 21-23; T 16; 1-4, 8-9, 13-7.  It is unusual for a vehicle to drive through the
23 security barriers, and the barriers were in place to protect a Homeland Security secured area, the
24 north entrance to the Golden Gate Bridge.  T 6: 10-11; T 25:15-19.

25      Ranger Hardin was concerned that the operator of the vehicle, Quitmeyer, was in need of
26 assistance and possibly lost.  T 25: 20-21.  He also was concerned because the manner in which
27 Quitmeyer attempted to negotiate the barriers was a possible indication that she had been

UNITED STATES' OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF IN
SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS
CR 07-0296 MAG                             2

drinking. D: ¶ 6; T 26: 23-25; T 27: 1-2. In addition, Ranger Hardin knew that a vehicle could not remain in the security barrier area, and must be cleared out. T 25: 22-23. For these reasons, Ranger Hardin approached the vehicle on foot, shined his flashlight at the car and called out to Quitmeyer with verbal warnings in hopes of getting her attention and getting her to stop moving the vehicle. D: ¶ 8; T 6: 12-16; T 20: 16-20, 24-25; T 21:1. Quitmeyer did not show any indication that she had seen him or heard him. T 11: 8-15; T 22: 25; T 23: 1-6. Quitmeyer's vehicle was only moving "a few inches," "back and forth three to five times. . . not making any headway." T 16: 3-4; T 17: 4-6. Quitmeyer's vehicle was bounded and she was "unable to get the vehicle out of the position that it was in." T 16: 8-9, 15-17.

When Ranger Hardin's prior attempts to gain Quitmeyer's attention failed, he knocked on her closed, passenger side window. D: ¶ 10; T 6: 25; T 7: 1-4; T 19: 18; T21: 19-20. Quitmeyer immediately leaned over, rolled down the window and responded to Ranger Hardin's questions without any display of resistance. T 11: 19-24. Quitmeyer's actions were uncoordinated, her eyes were bloodshot, and she spoke with a very slow, deliberate tempo. D: ¶ 12; T 7: 7-10. Ranger Hardin asked Quitmeyer if she had been drinking and she stated that she had consumed "a few drinks." D: ¶ 12. Quitmeyer consented to Ranger Hardin's request that she perform a series of field sobriety tests, which she failed. D: ¶¶ 13-14. She was placed under arrest for driving under the influence . D: ¶ 15. Quitmeyer's blood was drawn and her Blood Alcohol Content was 0.19%. D: ¶ 17.

### III. ARGUMENT

**A.     Ranger Hardin's Encounter With Quitmeyer Was Not A Result of Means Intentionally Applied To Restrain Her, And The Encounter Was Not A Seizure.**

A seizure must be the result of means intentionally applied by the government to restrain the subject. Brower v. County of Inyo, 489 U.S. 593, 596 (1989). Quitmeyer claims that she was seized because, contrary to the government's position, her vehicle was not "stuck" when Ranger Hardin approached the vehicle, and Ranger Hardin's "intention was to try to get [Quitmeyer's] vehicle to stop moving." See Defendant's Supplemental Brief ("S") at 4: 18-20.

UNITED STATES' OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF IN
SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS
CR 07-0296 MAG                              3

1  Ranger Hardin did confirm that the vehicle was not "stuck," if "stuck" is defined as unable to
2  move. T 15: 21-23, 25; T16: 1-4. The vehicle was technically moving, but only "a few inches,"
3  "back and forth three to five times. . . not making any headway." T 16: 3-4; T 17: 4-6. Ranger
4  Hardin stated that "the vehicle was unable to proceed because of the barriers that were around it"
5  and "[Quitmeyer] was unable to get the vehicle out of the position that it was in." T 16: 8-9, 15-
6  17. Therefore, Quitmeyer's argument that she was not technically "stuck" is irrelevant. While
7  Quitmeyer was free to move back and forth a few inches, she was nonetheless unable to
8  successfully free her vehicle from its position between the ditch and the barricade and leave the
9  area. Quitmeyer was trapped as a result of her own actions.
10     For the same reason, the fact that Ranger Hardin's "intention was to try to get the vehicle
11  to stop moving" is also irrelevant. T 20: 24-25; T 21: 1. Ranger Hardin did not intentionally
12  apply means to stop Quitmeyer from removing her vehicle from the position it held when he
13  approached the vehicle. Rather, Quitmeyer entered the barricades voluntarily and was then
14  unable to free her vehicle from its position between the ditch and the barricade.

      **B.    Quitmeyer's Belief That She Was Not Free To Terminate the Encounter With Ranger Hardin Is Objectively Unreasonable, And The Encounter Was Not A Seizure.**

17  Quitmeyer claims that she did not feel she was free to terminate her encounter with
18  Ranger Hardin. A person is seized "only if, in view of all of the circumstances surrounding the
19  incident, a reasonable person would have believed that he was not free to leave." United States
20  v. Mendenhall, 446 U.S. 544, 554 (1980). "Examples of circumstances that *might* indicate a
21  seizure, even where the person did not attempt to leave, would be the threatening presence of
22  several officers, the display of a weapon by an officer, some physical touching of the person of
23  the citizen, or the use of language or tone of voice indicating that compliance with the officer's
24  request might be compelled." Id. (emphasis added). The Court emphasized that "[i]n the
25  absence of some such evidence, otherwise inoffensive contact between a member of the public
26  and the police cannot, as a matter of law, amount to a seizure of that person." Id. At 555.
27     In Quitmeyer's Supplemental Brief, she states that "Ranger Hardin shined his flashlight
28

UNITED STATES' OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF IN
SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS
CR 07-0296 MAG                                4

through [her] window, but she continued to execute her three-point turns, indicating that she did not wish to engage in a police encounter." S 5: 8-9.  Quitmeyer claims that when Ranger Hardin "approached her vehicle in full uniform, yelled at her to stop, knocked on her window, and told her to roll it down," "[she] came to believe that she was not free to disobey Ranger Hardin's commands." S 5: 10-12.  However, Ranger Hardin's testimony at the evidentiary hearing raises doubt as to the veracity of these statements.  Ranger Hardin does not recall whether he yelled at Quitmeyer to stop, as she alleges, and does not recall telling her to roll down the window.  T 19: 18; T 20: 16-20.  When Ranger Hardin flashed his flashlight at Quitmeyer, hoping to get her attention, she failed to show any indication that she had seen him.  T 11: 8-12; T 22: 25; T 23: 1-3.  Similarly, when he used vocal commands to try and get her attention, she failed to show any indication that she had heard him.  T 11: 13-15; T 23: 4-6.  Quitmeyer herself testified that she continued to move her vehicle back and forth until Ranger Hardin was close to the car.  T 47: 3-12.  If Quitmeyer did not notice the flashlight nor hear Ranger Hardin's verbal commands[1], then these actions could not have played a role in her claimed belief that she was not free to terminate the encounter.  When Ranger Hardin knocked on the window, Quitmeyer responded immediately without any show of resistance.  T 11: 19-24.  Ranger Hardin's attempts to get Quitmeyer's attention so that she would stop rocking the vehicle back and forth were not the cause of Quitmeyer's inability to leave the area.  If Quitmeyer did not feel free to leave, her feelings are the result of her own actions.  In sum, the circumstances surrounding the incident do not indicate that Ranger Hardin's actions would cause a reasonable person to feel that she is unable to leave.

    **C.    The Encounter Between Ranger Hardin And Quitmeyer Was A Consensual Police-Citizen Encounter, And Reasonable Suspicion Is Not Required.**

In Quitmeyer's Supplemental Brief, she argues that in order for the community caretaker exception to the Fourth Amendment to apply, the officer must have an "objectively reasonable

---

[1] The passenger window was up when Ranger Hardin made his verbal commands, which may have made it more difficult for Quitmeyer to hear a voice outside the car than if the window had been down. (T21: 17-20).

UNITED STATES' OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS
CR 07-0296 MAG                          5

1  basis for believing that an occupant is seriously injured or imminently threatened with such
2  injury." S 7: 26; S 8: 1-2, citing Brigham City v. Stuart, 126 S.Ct. 1943, 1945 (2006).
3  Assuming, arguendo, that the community caretaker exception standard is not satisfied in this
4  case, the encounter between Ranger Hardin and Quitmeyer still qualifies as a consensual police-
5  citizen encounter and therefore reasonable suspicion is not required. Morgan v. Woessner, 997
6  F.2d 1244, 1252 (9th Cir. 1993). A consensual police-citizen encounter is not a seizure. Id.
7  Gathering information and providing assistance are both essential police actions, and a
8  consensual police-citizen encounter may serve either or both of these purposes. United States v.
9  Mendenhall, 446 U.S. at 554. The encounter between Ranger Hardin and Quitmeyer falls into
10 the category of police-citizen encounters. When Ranger Hardin approached Quitmeyer, she was
11 already in a position such that she could not exit the area. T 16: 8-9; 15-17. Ranger Hardin did
12 not stop her vehicle or otherwise detain her. Rather, he contacted her in order to gather
13 information about her situation and to assist her in successfully removing her car from its
14 location in a secured area. T 25: 20-23.

   **D.**  **Even If The Encounter Between Ranger Hardin And Quitmeyer Constituted A Seizure, There Was Reasonable Suspicion To Support The Seizure.**

17   Quitmeyer's Supplemental Brief acknowledges that, if she was in fact seized by Ranger
18 Hardin, he only needed to have had a reasonable suspicion that she was involved in criminal
19 activity. S 5: 18-20. Quitmeyer cites to United States v. Ogilvie, 527 F.2d 330, 332 (9th Cir.
20 1975), which held that the officer lacked reasonable suspicion to stop the defendant's car where
21 there was no evidence that she "drove fast, as if running away, disobeyed any traffic laws, or
22 otherwise drove in an unusual or erratic manner." S 6: 20-23. Quitmeyer's case is
23 distinguishable from Ogilvie because her presence in the security barriers *was* unusual and
24 involved erratic driving.
25   Ranger Hardin testified that Quitmeyer's presence in the barriers and attempt to turn
26 around was "unusual activity" and "[m]ost people don't drive into these barricades." T 6: 10-11.
27 He stated that it was "unusual activity coming towards a secured area, a Homeland Security
28

UNITED STATES' OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF IN
SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS
CR 07-0296 MAG      6

1  secured area guarding the north entrance of the bridge, and that piqued [his]
2  interest. . .Obviously [rangers] can't leave a vehicle in the barriers. [Rangers] need to clear that
3  out." T 25: 17-19, 22-23. Quitmeyer's driving was also erratic. Even though there were no
4  signs or flashing lights at the beginning of the security barriers, barricades are a traffic control
5  device. The barriers themselves indicate that a driver should not enter, yet Quitmeyer chose to
6  drive through them. T 12: 21-25; T 13: 1-2. Also, when Ranger Hardin shined his flashlight at
7  Quitmeyer's vehicle and called out to her to get her attention, she continued to rock her vehicle
8  back and forth between the barricade and the ditch, despite the fact that she was not making any
9  headway. T 16: 3-4; T 17: 4-6. In addition, while Ranger Hardin did not make the explicit
10 determination that Quitmeyer was under the influence of alcohol at the time he saw her
11 attempting to negotiate the security barriers, given his training and experience, it did cross his
12 mind that her behavior may indicate that she had been drinking. T 26: 23-25; T 27: 1-2. The fact
13 that Quitmeyer's unusual actions and erratic driving could be susceptible to innocent explanation
14 does not prevent them from also giving rise to a reasonable suspicion of criminal activity.
15 United States v. Arvizu, 534 U.S. 266, 277 (2002). Therefore, Quitmeyer's unusual and erratic
16 driving behavior, in close proximity to a Homeland Security secured area, gave rise to
17 reasonable suspicion of criminal behavior.
18 //
19 //
20 //
21 //
22 //
23 //
24 //
25 //
26 //
27 //
28

UNITED STATES' OPPOSITION TO DEFENDANT'S SUPPLEMENTAL BRIEF IN
SUPPORT OF DEFENDANT'S MOTION TO SUPPRESS
CR 07-0296 MAG                               7

**IV. CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Court deny Quitmeyer's motion to suppress all evidence and statements arising from the encounter between Ranger Hardin and Quitmeyer.

Dated: November 9, 2007

                                              Respectfully Submitted

                                              SCOTT N. SCHOOLS
                                              United States Attorney

                                                         /s/
                                              WENDY THOMAS
                                              Special Assistant United States Attorney