IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  CR 07-0296 NJV |
| Plaintiff, | ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS |
| v. | |
| CAROL QUITMEYER, | |
| Defendant. | |

This motion arises out of charges filed by the United States of America alleging that defendant Carol Quitmeyer was operating a motor vehicle under the influence of alcohol in violation of 36 C.F.R. § 4.23(a)(1). Ms. Quitmeyer was arrested on January 13, 2007 by Ranger Michael Hardin, who approached Ms. Quitmeyer's Volkswagon after she had attempted to turn the vehicle around approximately half-way through a series of staggered concrete barriers protecting the entrance to a secured area near the north anchorage of the Golden Gate Bridge in Marin County, California. The defendant has moved the court to suppress all evidence obtained as a result of this encounter, asserting that the contact between Ranger Hardin and Ms. Quitmeyer amounts to an unreasonable seizure in violation the Fourth Amendment.

The court held an evidentiary hearing on defendant's motion to suppress on October 19, 2007. Having read the parties' papers and carefully considered their arguments, the evidence presented at the hearing and the relevant legal authority, and good cause appearing, the court,

1  pursuant to the discussion below, hereby DENIES defendant's motion.

## I.  FACTS

On January 13, 2007, shortly before 10:00 p.m., Ranger Hardin of the National Park Service was conducting a routine patrol of the secured area surrounding the north anchorage of the Golden Gate Bridge.  He observed defendant's car approach and enter a series of concrete "Jersey" barriers that had been erected outside of the gate that served as the entrance to the secured area.  This protection consisted of several approximately three-foot high by eight-foot long concrete pieces that were staggered along the approach to the security gate.  The pattern of the barriers in the roadway was such that a car would have to weave through the barriers as it approached the gate, thus ensuring that it could not gain enough speed to crash through the gate.

Officer Hardin saw defendant's car proceed through approximately half of the barriers before stopping, backing up and performing a series of three-point turns in the narrow area between the barriers.  It quickly became apparent to Ranger Hardin, as the car began rocking alternately a few inches forward and a few inches back, that the driver had become, for all intents and purposes, stuck.  She was impeded on one side by one of the barriers and on the other by a ditch that ran approximately half the length of the barriers.  Had defendant backed up much further, she would have backed her car into the ditch and, Ranger Hardin feared that she would have "high-centered" her car "and been unable to get out" without assistance.

Fearing this and thinking it unusual for a car to not only have entered the park after dark but to have begun navigating the barriers in the approach to the restricted area, Ranger Hardin waived his flashlight and shouted in an attempt to catch the driver's attention.  The driver, however, showed no sign that she had seen or heard the officer and continued attempting to turn the car.  Ranger Hardin then approached the vehicle and by knocking on one of the windows again attempted to speak to the defendant.  Ms. Quitmeyer then rolled down her window and spoke to Ranger Hardin.

Ranger Hardin noticed that the defendant was slow of speech and movement, had bloodshot eyes and responded affirmatively to an inquiry into whether she had been drinking.  Ranger Hardin then performed a series of field sobriety tests before transporting Ms. Quitmeyer to the headquarters

2

of the National Park Service for a test of her blood alcohol level. She was detained until sober and later charged for driving under the influence of alcohol.

The defendant now asserts that the encounter between Ranger Hardin and herself was a seizure within the meaning of the Fourth Amendment, for which Ranger Hardin did not have a reasonable suspicion of illegal activity. The United States asserts that the encounter did not amount to a seizure but that even if it did, it complied with all constitutional requirements by being either based upon reasonable suspicion or performed in the course of Ranger Hardin's community caretaking function.

## II.  DISCUSSION

The Fourth Amendment provides that each person has the right to be free from "unreasonable searches and seizures." The Supreme Court has held that, "except in certain carefully defined classes of cases," an un-consented-to search or seizure of person or property, without a valid search warrant, violates the Fourth Amendment. *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973).

### A.  THE ENCOUNTER BETWEEN RANGER HARDIN AND MS. QUITMEYER AMOUNTED TO A SEIZURE WITHIN THE MEANING OF THE FOURTH AMENDMENT

The first step in the analysis of the constitutionality of an encounter between an officer and a citizen is a determination of whether the encounter in question was, in fact, a seizure. Both parties have agreed that a seizure of a person occurs when an officer inhibits "freedom of movement through means intentionally applied." *Bower v. County of Inyo*, 489 U.S. 593, 596-97 (1989). Even an intentional restriction of movement, however, is not a seizure unless "a reasonable person [in the defendant's position] would have believed that he was not free to leave." *U.S. v. Mendenhall*, 446 U.S. 544, 554.

Here, Ranger Hardin stated that he did intend to make the defendant's vehicle stop moving. Further, although she may not have heard or seen him, a reasonable person in Ms. Quitmeyer's situation, who had seen an officer waving a flashlight and shouting, would have believed that she was being ordered to stop. Once he approached her and knocked on the window, any lingering feeling that she was free to disobey that order would have disappeared. A reasonable person in Ms.

3

Quitmeyer's position would not have felt free to ignore Ranger Hardin in order to continue maneuvering her car.

### B. THE CIRCUMSTANCES OF THE STOP SUPPORT A REASONABLE SUSPICION THAT MS. QUITMEYER WAS ENGAGED IN ILLEGAL ACTIVITY

Once this preliminary determination is made, the court must turn to the question of whether the seizure was reasonable despite the absence of a valid warrant. Generally, "[b]efore an officer may initiate a traffic stop, he must have reasonable suspicion to believe that a traffic violation has occurred." *U.S. v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002). The circumstances in this case are such that a reasonable officer in Ranger Hardin's position would have been fully justified in suspecting Ms. Quitmeyer of unlawful activity.

The nature of the barriers themselves provides one such basis for this suspicion. A series of offset "Jersey" barriers are not the kind of obstacles one would normally expect to find on an open roadway and not one through which a prudent driver would attempt to navigate without being certain that she belonged on the other side. Ranger Hardin knew that no one belonged on the other side of the barriers, as they were a security measure put in place to protect the secured area that lay just beyond.

The restricted nature of the area that lay beyond the barriers, combined with the fact that it was late at night, that the location was some ways outside of town and that the park had long since closed very reasonably added to the officer's suspicion. No one except Ranger Hardin had a legitimate and lawful reason to be there at that time. It is entirely reasonable that Ranger Hardin could have suspected that someone in these circumstances was engaged in illegal activity.

Adding as well to the possible suspicion is the fact that defendant had attempted several times to execute a three-point turn within the narrow space of the barriers but had ended up driving a few inches forward and backward without making any real progress. It is reasonable that Ranger Hardin could suspect that the difficulty defendant was having was due to intoxication. And, in fact, Ranger Hardin testified that the thought that the driver might have been drinking did run through his mind.

4

Ms. Quitmeyer's testimony that she could not see beyond the first barrier and therefore could not tell there were multiple barriers is irrelevant, as is her testimony that she had become lost and accidentally entered the park. A reasonable-suspicion analysis does not turn upon the viewpoint of the defendant. We must determine the reasonableness of Ranger Hardin's actions from the vantage point of a reasonable officer in Ranger Hardin's position. *Colin*, 314 F.3d at 442.

In this case, a reasonable officer would have been justified in assuming that Ms. Quitmeyer had driven knowingly into the park after it was closed and could see, with the use of her headlights, that there were a series of barriers into which she most likely should not travel. As stated above, he could from there have reasonably concluded that she was either intoxicated or engaging in other illegal activity. Ranger Hardin's contact with Ms. Quitmeyer is therefore justified under a reasonable-suspicion analysis.

### C. EVEN ABSENT REASONABLE SUSPICION, THE STOP WAS WARRANTED, AS IT FELL WITHIN RANGER HARDIN'S COMMUNITY CARETAKING FUNCTION

Even had Ranger Hardin not had a reasonable suspicion to stop Ms. Quitmeyer, the encounter is justifiable as an execution for the community caretaking function that is part of every law enforcement officer's duties. The Supreme Court has recognized that many encounters between officers and citizens will be "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441.

Indeed, many encounters between officers and citizens flow from an officer carrying out his duty to help those in need. For, "[i]n addition to being an enforcer of the criminal law, a police officer is a 'jack-of-all-emergencies.' He is expected to aid those in distress, combat actual hazards, prevent potential hazards from materializing, and provide an infinite variety of services to preserve and protect community safety." *U.S. v. Erickson*, 991 F.2d 529, 531 (9th Cir. 1993) (internal citations omitted). For this reason, both the Supreme Court and the Ninth Circuit have recognized a community caretaking exception as justification for the warrantless seizure of an automobile. *Id.* at 531-32; *Cady*, 413 U.S. 441.

5

This case provides a perfect example of an officer carrying out the community caretaking function of his job. For, although it would have been reasonable for Ranger Hardin to suspect that the defendant was engaged in unlawful activity, what he was more likely to suspect, and what he was, in fact, concerned about, was that Ms. Quitmeyer needed help. She had gotten herself into a situation from which she was having difficulty extricating herself and which could get much more difficult to deal with if she backed up too far, falling into the ditch behind her. Further, she had gotten herself into a situation that, if not remedied, would have obstructed the entryway to a secured area.

Both to assist Ms. Quitmeyer and to ensure that, should the need arise, authorized personnel would be able to enter or exit the restricted area, Ranger Hardin justifiably approached and made contact with the defendant. This contact was made pursuant to the community caretaking functions of his job.

### III. CONCLUSION

The initial contact, whether justified by an objectively reasonable suspicion or by the carrying out of his community caretaker functions, was valid under the Fourth Amendment and was not in violation of Ms. Quitmeyer's rights. All evidence obtained as a result of that initial contact was legally obtained and shall not be suppressed.

For the reasons above, defendant's motion to suppress is DENIED. This matter shall be placed on the calendar January 3, 2008 at 9:30 a.m. before the Honorable Nandor J. Vadas, 450 Golden Gate Avenue, San Francisco, California, Courtroom E on the 15th Floor for setting of trial.

Dated: 12/4/07

NANDOR J. VADAS
United States Magistrate Judge